CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

OCT 18 2013

JULIA C. DUDLEY, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal Action No. 3:11CR00031 |
| | ) | Civil Action No. 3:13CV80580 |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| TERESA ELIZABETH SIMS, | ) | |
| | ) | By: Hon. Glen E. Conrad |
| Defendant. | ) | Chief United States District Judge |

Teresa Elizabeth Sims, a federal inmate proceeding pro se, filed this action as a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. The government filed a motion to dismiss the action, to which Sims did not respond. For the reasons that follow, the government's motion to dismiss will be granted and Sims' motion to vacate will be denied.

## Background

On November 9, 2011, Sims and six other individuals were named in a fourteen-count indictment returned by a grand jury in the Western District of Virginia. Count One charged Sims with conspiracy to distribute and possess with intent to distribute two hundred and eighty (280) grams or more of cocaine base, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(A), and 846.

On January 24, 2012, Sims entered a plea of guilty to a lesser included offense of Count One of the indictment, pursuant to a written plea agreement. The plea agreement advised Sims that this lesser included offense carried a mandatory term of imprisonment of five years, plus a term of supervised release, under 21 U.S.C. §§ 841(b)(1)(B) and 846. (Plea Ag. at 1.) By signing the agreement, Sims certified that she was pleading guilty because she was, in fact, guilty of the offense charged and not because of any threats or promises; that she had discussed the plea

agreement and all other matters pertaining to the indictment with her attorney; and that she was fully satisfied with her attorney and the attorney's advice. (Plea Ag. at 2, 9.)

During the hearing conducted pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the court established that Sims possessed the capacity to make a voluntary, intelligent, and informed plea. (Plea Hearing Tr. at 38.) The court also established that Sims understood the charge to which she was pleading guilty, as well as the purpose of the Rule 11 proceeding. (Id. at 7, 38.)

At the hearing, the court instructed the Assistant United States Attorney ("AUSA") to review the charges against Sims; the elements of the lesser included offense to which she intended to plead; the penalties prescribed by statute for that offense; and the most important provisions of the plea agreement that Sims had reached with the government. (Id. at 8.) In response, the AUSA explained that Sims would be pleading guilty to conspiring to distribute and possess with the intent to distribute twenty-eight (28) grams or more of a mixture containing crack cocaine. (Id. at 8–9.) He instructed that "[t]he range of punishment for that offense is imprisonment for a term of . . . five to forty years." (Id. at 9.) He also explicitly noted that "there's a mandatory minimum of five years." (Id.) After reviewing the elements of the offense, the AUSA again explained that "the range of punishment is five to forty years." (Id.) Then the AUSA outlined several sections of the plea agreement, including the government's obligation to recommend a sentence within the applicable guideline range and the possibility of a substantial assistance motion. (Id. at 10–11.) When asked if the AUSA's summary of the plea agreement was consistent with her own understanding of the agreement, Sims responded in the affirmative. (Id. at 12–13.)

The court then inquired as to whether Sims was voluntarily pleading guilty. In response to questions from the court, Sims confirmed that no one had made any promises or representations regarding the disposition of her case other than those set forth in the plea agreement; that no one had attempted to coerce, force, or compel her to plead guilty; and that no one had exerted undue influence over her. (Id. at 13–14.) The court went on to explain that her sentence may be "very different from what [her attorney] or [the AUSA] or someone else may have told [her] that [she] could hope to receive." (Id. at 18.) When asked if she understood that there were "no guarantees" about her sentence, and that the sentence imposed might be different from what she was told to expect by her attorney, Sims responded in the affirmative. (Id. at 18–19.) Sims also affirmed that she understood that there was "almost a certainty that [she would] be required to serve some period of time in the penitentiary" if she pled guilty to the conspiracy offense, and that she would be required to serve "the full time imposed, less any good conduct time earned." (Id. at 19.)

The court subsequently reviewed the constitutional rights that Sims would waive if she entered a plea of guilty. Notwithstanding all of the valuable constitutional rights that she would waive by pleading guilty, the fact that the offense to which she was pleading guilty carried a mandatory term of imprisonment of five to forty years, and the requirement that she serve the full term imposed less any good conduct time earned, Sims indicated that she still wished to enter a plea of guilty. (Id. at 30.)

The court asked Sims to explain what she had done that made her believe that she was guilty of the conspiracy offense. In response, Sims indicated that she knew her son and her brother were distributing crack cocaine; that she helped her son and her brother to distribute

3

crack cocaine; that she did so pursuant to an overall agreement to distribute crack cocaine; and that she was involved in the distribution of at least twenty-eight (28) grams of crack cocaine. (Id. at 31–32.)

The court then called upon the government to present any evidence that would support Sims' plea of guilty. Proceeding by proffer, the AUSA summarized the government's evidence as follows:

> Sims is the sister of Reagan Richards, who is the lead defendant in this matter, and the mother of Rashard Richards, who entered a guilty plea yesterday. Sims permitted the conspiracy to operate out of her home for a period of time. She knew that Reagan Richards was storing cocaine in her home. Teresa Sims routinely drove members of the conspiracy, including Rashard Richards, her son, to conduct transactions that are covered by the indictment. Sims also collected crack cocaine from both Reagan and Rashard Richards to trade for prescription drugs and sold cocaine on occasion for Reagan Richards and her son, Rashard Richards.
> I would also note that during the conspiracy Reagan Richards and Rashard Richards would typically enlist one or more female members of the conspiracy to hold and store cocaine for future distribution. Neither Reagan Richards nor Rashard Richards preferred to carry any more crack cocaine than the amount that they had planned to sell for any particular transaction. Instead, one of the female members of the conspiracy, including . . . Teresa Sims, would hold the crack cocaine in their underclothing while the transactions were taking place.

(Id. at 32–33.)

The AUSA also offered to the court a written statement of facts. In addition to the evidence described above, the written statement indicates that between June 2010 and October 14, 2011, the members of the conspiracy, including Sims, sold 132 ounces (3,696 grams) of crack cocaine. Sims and her counsel had each endorsed this written statement, agreeing that it was "accurate in all respects." (Statement of Facts, Docket No. 107.)

The court inquired as to whether the AUSA's summary of the evidence was consistent with Sims' understanding as to what the evidence would have been if the matter had gone forward to trial. Sims responded in the affirmative. (Id. at 34.)

At the conclusion of the hearing, the court asked whether Sims was satisfied with her attorney's representation, and whether she had any questions regarding anything that had been said during the hearing. Sims indicated that she was satisfied with the services provided by her attorney, that she understood "everything" that had been discussed during the hearing, and that she did not have any questions for the court. (Id. at 35–37.) The court took Sims' plea agreement under advisement. (Id. at 37.)

Prior to the sentencing hearing, a probation officer prepared a presentence investigation report. Consistent with the stipulations in the plea agreement and statement of facts, the probation officer determined that Sims should be held accountable for 3,696 grams of cocaine base and, thus, subject to a base offense level of 36. Additionally, Sims received a two-level enhancement for maintaining a premises for the purpose of manufacturing or distributing a controlled substance, and a three-level reduction for acceptance of responsibility, resulting in a total offense level of 35. When combined with a criminal history category of IV, Sims' total offense level gave rise to a range of imprisonment of 235 to 293 months under the 2012 Sentencing Guidelines.

The court conducted Sims' sentencing hearing on April 12, 2012. There were no objections to the presentence investigation report. Consequently, the court adopted the report, finding that Sims' total offense level and criminal history category gave rise to a recommended term of imprisonment of 235 to 293 months. After considering the factors set forth in 18 U.S.C.

§ 3553(a) and granting the government's motion for substantial assistance, the court departed from the guidelines range and imposed a term of imprisonment of 108 months.

On September 17, 2012, Sims moved to reduce her sentence under the Fair Sentencing Act, which amended the federal advisory sentencing guidelines applicable to criminal cases involving crack cocaine. This court denied Sims' motion because she was sentenced after the effective date of the amended guidelines. Therefore, she had already received the full benefit of the amendment, and was not entitled to any further reduction in her sentence.

On April 4, 2013, Sims filed the instant motion for relief under 28 U.S.C. § 2255, asserting one claim of ineffective assistance of counsel. The government has moved to dismiss the motion, arguing that the asserted claim is without merit. The defendant was notified on May 10, 2013 that she had twenty-one (21) days to respond to the government's motion; she did not file a response. The matter is now ripe for review.

## Discussion

Claims of ineffective assistance are reviewed under the standard enunciated by the Supreme Court of the United States in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). In order to succeed on such a claim, a defendant must show: (1) that his "counsel's performance was deficient," and (2) that "the deficient performance prejudiced the defense." (<u>Id.</u> at 687.) With respect to the first prong, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." (<u>Id.</u> at 688.) With respect to the second, the defendant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (<u>Id.</u>)

A court need not address both components of an ineffective assistance claim "if the defendant makes an insufficient showing on one." (Id. at 697.) "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." (Id.)

In the context of a guilty plea, a defendant can show prejudice only by demonstrating "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). To satisfy this element, a defendant "must convince the court" that such a decision "would have been rational under the circumstances." Padilla v. Kentucky, 559 U.S. 356, 130 S. Ct. 1473, 1485 (2010). Accordingly, the defendant's "subjective preferences . . . are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." United States v. Fugit, 703 F.3d 248, 260 (4th Cir. 2012); see also Pilla v. United States, 668 F.3d 368, 373 (6th Cir. 2012) ("Pilla cannot [establish prejudice] by merely telling us now that she would have gone to trial then if she had gotten different advice. The test is objective, not subjective . . . .").

A defendant cannot be prejudiced by any misinformation his counsel allegedly provided him regarding his potential sentence if the trial court properly informed him of the potential sentence he faced. United States v. Foster, 68 F.3d 86, 88 (4th Cir. 1995). "If the information given by the court at the Rule 11 hearing corrects or clarifies the earlier erroneous information given by the defendant's attorney and the defendant admits to understanding the court's advice, the criminal justice system must be able to rely on the subsequent dialogue between the court and defendant." (Id.)

7

In moving for reconsideration and reduction of her sentence, Sims asserts one claim of ineffective assistance of counsel. Specifically, Sims asserts that her counsel misinformed her about the terms of possible incarceration as a result of her guilty plea, and stated that Sims would receive, at most, a period of incarceration between eighteen (18) and twenty (20) months. Upon review of the record, the court concludes that this claim is without merit. Assuming, without deciding, that her counsel's performance was deficient, Sims' claim must fail for lack of prejudice.

While Sims may now regret her plea of guilty, her claim that she was prejudiced because her attorney misinformed her as to the terms of possible incarceration is belied by the record. As set forth above, the plea agreement signed by Sims specifically states that the "maximum statutory penalty" for her pled offense is "imprisonment for a term of forty years." (Plea Ag. at 1.) The plea agreement also states that "[t]here is a mandatory minimum sentence of imprisonment for a term of five years." (Id.) Further, by signing the agreement, Sims acknowledged that the determination of her sentence "is in the sole discretion of the [c]ourt." (Id. at 2.)

Moreover, during the Rule 11 hearing, Sims stated, under oath, that she understood that her sentence "may be very different from what [her attorney] may have told [her] that she could hope to receive." (Plea Hearing Tr. at 18.) She acknowledged that she would almost certainly be subject to a term of imprisonment if convicted of the conspiracy offense, and that she would be required to serve the full term of imprisonment imposed less any good conduct time earned while incarcerated. (Plea Hearing Tr. at 19.) Sims affirmed that no one had promised her any particular sentence, or made any other promises or representations other than those set forth in

8

the plea agreement. (Plea Hearing Tr. at 13.) Sims also affirmed that the AUSA's summary of the plea agreement, including the portion stating that the potential punishment included five to forty years imprisonment, was consistent with her understanding of the deal. (Id. at 9, 12.)

Sims has not offered any evidence that would undermine her sworn statements regarding the voluntariness of her guilty plea. Consequently, Sims is bound by the statements that she made during the Rule 11 hearing, and her current allegations to the contrary must be rejected. See Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1299 (4th Cir. 1992) ("Absent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy.") (citing Blackledge v. Allison, 431 U.S. 63, 74-75 (1977)); see also United States v. Lemaster, 403 F.3d 216, 221-222 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during the Rule 11 colloquy is conclusively established, a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

Moreover, the evidence to support her conspiracy charge was overwhelming. Sims permitted the conspiracy to operate out of her home for a period of time and allowed a co-conspirator to store cocaine in her home. (Plea Hearing Tr. at 33.) She routinely drove members of the conspiracy to conduct transactions for which they were later indicted. (Id.) Further, the government could have adduced that Sims collected crack cocaine to trade for prescription drugs and sold cocaine on occasion for her son and another co-conspirator. (Id.) Sims also held crack cocaine in her underclothing while her co-conspirators completed drug transactions. (Id.) In connection with her plea agreement, Sims personally endorsed a statement of facts describing this evidence, acknowledging that it was "accurate in all respects." (Statement of Facts, Docket

9

No. 107.) By pleading guilty, Sims was able to receive a three-level reduction for acceptance of responsibility, which lowered her total offense level and, thus, her applicable guidelines range of imprisonment.

Against this backdrop, Sims is unable to show that declining the government's plea offer and proceeding to trial "would have been rational under the circumstances." Padilla, 130 S. Ct. at 1485. Accordingly, her ineffective assistance claim fails for lack of prejudice under Strickland and Hill. See Pilla, 668 F.3d at 373 (holding that "no rational defendant in Pilla's position would have proceeded to trial," where the defendant "faced overwhelming evidence of her guilt," "would have been convicted[,] and would have faced a longer term of incarceration") (internal quotation marks omitted).

## Conclusion

For the reasons stated, the court will grant the government's motion to dismiss and deny Sims' motion to vacate, set aside, or correct her sentence. Additionally, because Sims has failed to demonstrate "a substantial showing of the denial of a constitutional right," the court will deny a certificate of appealability. See 28 U.S.C. § 2253(c).

The Clerk is directed to send certified copies of this memorandum opinion and the accompanying order to the defendant and all counsel of record.

ENTER: This 18th day of October, 2013.

_____
Chief United States District Judge